UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| **DEAN DAIGLE** | * | **CIVIL ACTION NO. 06-2393** |
| **VERSUS** | * | **JUDGE MELANÇON** |
| **COMMISSIONER OF SOCIAL SECURITY** | * | **MAGISTRATE JUDGE HILL** |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993. Dean Daigle, born December 25, 1964, filed applications for disability insurance benefits and supplemental security income on May 28, 2004, alleging disability as of January 7, 2002, due to a low back injury.

## FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is not substantial evidence in the record to support the Commissioner's finding that the claimant was not disabled and that this case should be remanded for further proceedings.

In fulfillment of F.R.Civ.P. 52, I find that this case should be remanded for further proceedings, based on the following:

**(1) Records from Teche Regional Medical Center dated January 7, 2002 to September 21, 2003**. On January 7, 2002, claimant was admitted for lower back pain after slipping in the shower and falling on his back. (Tr. 87, 131-38). The impression was cervical strain. (Tr. 139). Claimant received lumbar epidural steroid injections and underwent physical therapy. (Tr. 88, 90-91, 93-95, 96-104, 168-69, 171).

On July 22, 2003, claimant was seen after he had fainted in his yard. (Tr. 106). A CT of the head was normal. (Tr. 118). Cervical spine x-rays were normal. (Tr. 119). The impression was syncope. (Tr. 121). He was instructed not to drive.

**(2) Records from Dr. Jeffrey Fitter dated January 8, 2002 to June 22, 2005, 2004 and Dr. Stefan G. Pribil dated January 26, 2002 to October 23, 2003**. On January 8, 2002, claimant complained of back pain radiating in to the legs after slipping and falling in the shower. (Tr. 152). He had rather marked restriction of motion, no spasm, and a negative neurologic examination. X-rays suggested a transitional level with bilateral pseudarthroses, and some sclerosis of the L5 facets and anterior spurring at L2, 3, and 4. Dr. Fitter's impression was lumbar strain and mild degenerative changes. He prescribed Soma, Vicodin, and a Thermophore heat pad.

An MRI dated February 8, 2002, showed central canal stenosis from L1-L2 through the L4-L5 levels, multiple bulging intervertebral discs, bulging to protruding L3-L4 and L4-L5 intervertebral discs which potentiated the severe central canal stenosis, lumbar spondylosis and osteochondrosis, levolumbar scoliosis, and lumbar facet arthrosis without lateral recess stenosis. (Tr. 154). Dr. Fitter opined that claimant had significant spinal stenosis, which was responsible for his symptoms. (Tr. 155).

On August 28, 2002, claimant complained that his symptoms had gotten substantially worse with increased backache and pain radiating into the left leg. (Tr. 162). Dr. Fitter did not see any severe changes on neurologic examination, and claimant's left straight leg raise was just mildly positive. Claimant requested a consult with a neurosurgeon.

On October 10, 2002, claimant saw Dr. Pribil for complaints of back pain, left leg pain, and impotence. (Tr. 184). On examination, claimant's neck had full range of motion with normal strength in the upper extremities. (Tr. 185). In the lower extremities, he had 4 out of 5 weakness of EHL on the left. He had a positive straight leg raising on the left. He had decreased pinprick on the left calf and some on the left thigh. He had spasm rigidity, and some loss of cervical and lumbar lordosis.

An MRI showed a lumbar disc herniation with a resultant moderate to severe stenosis at L2-3, L3-4, and L4-5 levels. He appeared to have L5 and L2-3 type radiculopathy, which contributed to his ultimate back pain and left leg weakness. He recommended that claimant consider surgery.

On November 21, 2002, Dr. Pribil stated that claimant's lumbar CT scan showed the presence of multiple level disc disease and disc herniations, diffused and predominately to the left at the L3-4, L4-5, and possibly the L5-S1 levels. (Tr. 178). He also had left lumbar radiculopathy. Dr. Pribil recommended that claimant consider a percutaneous endoscopic disc surgery.

Claimant returned to Dr. Fitter on December 10, 2002, with unchanged symptoms. (Tr. 165). On examination, he had continued severe restriction of range of motion in the low back, voluntary to some degree. Dr. Fitter refilled his prescriptions for Lortab 7.5 and Soma.

On March 11, 2003, Dr. Fitter reported that claimant had required fairly regular medication refills since his visit in December. (Tr. 166). Claimant was uncertain whether he would have surgery with Dr. Pribil. On examination, pain still radiated into the left leg, and claimant had a persistently positive left SLR to a mild degree.

Dr. Fitter noted that he had been trying to limit claimant to 30 tablets each of Lortab 7.5 and Soma. He also refilled claimant's Zoloft 50 mg daily. He restricted

claimant's activities to tolerance.

On June 23, 2003, claimant stated that he had benefitted from physical therapy. (Tr. 170). Dr. Fitter saw some improvement in lumbar range of motion. He noted that claimant had continued with fairly regular refills of Soma and Lortab, and cautioned claimant about the addictive potential of both medications.

On March 24, 2004, claimant stated that he was still the same, with intermittent rather severe symptoms and pain radiating into the left leg. (Tr. 175). On examination, he continued to have a mildly positive left straight leg raise and moderate restriction of motion in the lumbar spine. Dr. Fitter recommended conservative management. Claimant complained of problems with generic medications making him sick, so Dr. Fitter prescribed brand name Lortab and Soma.

On November 12, 2004, claimant reported that his chronic back symptoms were a bit better, but he still appeared to have a mildly positive straight leg raise and was taking medication quite regularly. (Tr. 270). Range of motion in the lumbar spine was just mildly restricted, with 70 degrees forward flexion present.

Dr. Fitter encouraged claimant to start tapering his medication off. Claimant mentioned that he was still considering surgical treatment. Dr. Fitter hoped that improvement would continue, and that surgery would not be necessary.

On March 8, 2005, claimant reported that his back had been feeling worse recently. (Tr. 268). On exam, he still had mild restriction of motion in the lumbar spine, and tenderness was present at L4. Dr. Fitter recommended that claimant continue his present conservative treatment program, and to try to make the medication last longer to avoid addiction.

Claimant reported that he had been doing better with some improvement in his discomfort on June 22, 2005. (Tr. 267). He was able to mow his lawn, although he did have at least mild increase in back discomfort afterwards. He still had mild restriction of motion in the lumbar spine with tenderness at L4 on examination.

Dr. Fitter stated that claimant appeared to be making some symptomatic improvement. Claimant mentioned that he really wanted to go back to work, but was not certain whether he could tolerate activities yet. Dr. Fitter advised him that he could give him a work release whenever sufficient improvement had occurred.

**(3) Report from Baldwin Family Care Center dated February 27, 2004**. Claimant reported developing back pain about one month prior. (Tr. 207). He had a life-long history of some back discomfort because of leg length discrepancy secondary to a left hip condition which was operated on at age 5. He had worn a 1/4-inch shoe lift, but it did not seem to do much good anymore.

On examination, claimant walked with a normal gait, but had a clinical leg length discrepancy of almost an inch. He had some mild tenderness across the low back at L4, and mild restriction of motion. His neurological examination was normal.

X-rays revealed some mild narrowing of L3-4 and L4-5 discs, with some spurring a the L3-4 level. Claimant also had a rather sharp lumbosacral angle.

The impression was chronic lumbar strain secondary to leg length discrepancy, and probable coxaplana of the left hip. He was prescribed an insole lift of another ½-inch. He was released to his regular work activities.

**(4) Residual Functional Capacity Assessment dated July 8, 2004**. The evaluator determined that claimant could lift/carry 20 pounds occasionally and 10 pounds frequently. (Tr. 216). He could stand/walk and sit about 6 hours in an 8-hour workday. He had unlimited push/pull ability. He could occasionally climb, stoop, kneel, crouch, and crawl, and frequently balance. (Tr. 217).

**(5) Note by Morgan City Orthopedic Clinic dated February 14, 2006**. Claimant continued with significant back pain, with occasional radiation of pain into his left leg. (Tr. 223). He had tried to go back to work two or three times, but was unable to pass pre-employment physical exams because of his chronic backache. His examination showed mild restriction of motion with tenderness at L4 and the left sacroiliac. He had a negative neurologic exam.

Claimant was there primarily to ask Dr. Vitter to fill out forms for social security disability. He refilled claimant's medications.

**(6) Records from Dr. Edison Lim Ong dated February 27, 2004 to May 24, 2006**. Claimant was treated for low back pain, hypertension, and adult ADD. (Tr. 225-262). He was prescribed Lortab for his back pain, and Strattera for ADD. (Tr. 226-27). His hypertension and ADD were well-controlled on medications. (Tr. 228, 232, 233).

**(7) Medical Source Statement dated February 19, 2006**. Dr. Fitter determined that claimant was be able to sit for 4 hours, stand for three hours, walk for three hours, and drive for 2 hours in an 8-hour day. (Tr. 263). He could lift 10 pounds frequently, 20 pounds occasionally, and never more than 21pounds. He was able to bend, squat, and kneel occasionally, reach above the shoulder frequently, and never crawl or climb. He could be exposed to heights, machinery, noise/vibrations, dust/fumes, and extreme temperatures occasionally.

Claimant was able to use his hands and feet for simple and firm grasping, and fine manipulating. (Tr. 264). His condition was affected by changes in the season. Dr. Fitter determined that claimant could not reasonably be expected to engage in a full range of sedentary work consisting of 8 hours a day on a constant and sustained basis.

**(8) Claimant's Administrative Hearing Testimony**.  At the hearing on August 8, 2006, claimant was 41 years old.  (Tr. 292).  He had completed the sixth grade.  He attended vocational school for two and a half years for refrigeration and air conditioning.

Claimant had worked in the shipyard as a fitter, welder, and outside machinist. (Tr. 293).  He had also been employed as a deck hand and relief captain.  He had last worked in January, 2001, on a tugboat.

Claimant testified that he had hurt his back when he slipped and fell while getting out of the shower.  (Tr. 295).  He also had adult attention deficit disorder.  He stated that he was taking Strattera for ADD, which had helped him.  Additionally, he was depressed.  (Tr. 302).

Claimant reported that he had not had surgery because he could not afford it. (Tr. 296).  He stated that he chose not to go to the charity system for the surgery.  He testified that he had received injections from Dr. Ong.  (Tr. 297).

Claimant complained that his back pain was constant.  He stated that he had bad days where he could hardly move for a couple of days.  (Tr. 298).  He testified that he had a good day once or twice a week, where he could do a little housework, light cooking, and a little laundry for an hour or so.  He rated his normal pain at four or five out of 10, and his worse pain as 9 or 10.  (Tr. 299).

Regarding limitations, claimant testified that his pain worsened with activity. He stated that he could not lift more than five or six pounds. (Tr. 300). He reported that he had difficulty sleeping. He said that he had to lie down during the day, and take two 15-minute breaks per day. (Tr. 301, 303).

**(9) Administrative Hearing Testimony of Cindy Harris, Vocational Expert ("VE")**. The ALJ posed a hypothetical in which he asked Ms. Harris to assume a claimant who was 41 years old, had a sixth grade education, was literate, and had some welding training; was restricted to lifting and carrying 20 pounds occasionally and 10 pounds frequently; could stand and walk for three hours, drive two hours, and sit four hours out of an eight-hour day; could frequently lift above his shoulder, occasionally bend, squat, and kneel, and never crawl or climb; could climb ladders, ropes, or scaffolds, was limited in balancing activities, was limited for any work at unprotected heights or around dangerous moving machinery; was capable of understanding, remembering, and carrying out detailed but not highly complex type of instructions, could attend and concentrate for extended periods, and could deal appropriately with workplace peers, bosses, and occasional routine work changes. (Tr. 304-05). In response, Ms. Harris testified that such claimant could not perform his past work, but could work as a light, unskilled cashier, of which there were 4,000 positions statewide and 300,000 nationally; light, unskilled information clerk, of

which there were 1,000 positions statewide and 67,000 nationally, and light, unskilled hand packager, of which there were 1,000 positions statewide and 100,000 nationally. (Tr. 306). When the ALJ changed the hypothetical to include a requirement of having to take unscheduled breaks because of being tired, fatigued, unable to concentrate, having side effects from medication, or needing to lie down, the VE testified that such person would probably be subject to termination. (Tr. 308).

**(10) The ALJ's findings**. Claimant argues that the ALJ erred: (1) in failing to give proper weight to the treating physicians; (2) in improperly failing to give full credibility to claimant's testimony in light of the longitudinal medical evidence which supported it; (3) in failing to properly apply Rule 83-10 to this case, and (4) in failing to recognize that claimant met the requirements under § 1.04C of the listing of impairments [20 C.F.R Part 404, Subpart P, App. 1]. Because I find that the ALJ failed to properly evaluate the treating physicians' opinions, and also failed to consider the side effects of claimant's medications, I recommend that this matter be **REMANDED** for further proceedings.

As to the first argument, the records from claimant's treating physician, Dr. Fitter, indicate that claimant does not have the ability to maintain employment. In the Decision, the ALJ gave "moderate" weight to the state agency medical consultant's opinion that claimant could perform light work. (Tr. 17). He discounted

Dr. Fitter's opinion, apparently on the ground that it was "equivocal at best." (Tr. 16). However, the ALJ's reasoning does not meet the Fifth Circuit's requirements for evaluating a treating physician's opinion.

It is well established that the opinion of a treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994), *cert. denied*, 514 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995). A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and *is not inconsistent with ... other substantial evidence*." (emphasis added). *Newton,* 209 F.3d at 455 (citing 20 C.F.R. § 404.1527(d)(2)). Good cause for abandoning the treating physician rule includes disregarding statements by the treating physician that are brief and conclusory, not supported by medically accepted clinical laboratory diagnostic techniques, or otherwise unsupported by evidence. *Leggett*, 67 F.3d at 566; *Greenspan*, 38 F.3d at 237.

In this case, Dr. Fitter based his opinions on claimant's physical findings, as well as an MRI. Based on claimant's physical examination and the MRI, Dr. Fitter

opined that claimant had significant spinal stenosis, which was responsible for his symptoms. (Tr. 155).

Claimant's treating neurosurgeon, Dr. Pribil, reviewed claimant's lumbar CT scan, and found multiple level disc disease and disc herniations, diffused and predominately to the left at the L3-4, L4-5, and possibly the L5-S1 levels, and left lumbar radiculopathy. (Tr. 178). In light of these findings, Dr. Pribil recommended that claimant consider a percutaneous endoscopic disc surgery. However, claimant had no funding for treatment. (Tr. 296).

At claimant's last examination, Dr. Fitter noted that claimant had tried to go back to work two or three times, but was unable to pass pre-employment physical exams because of his chronic backache. (Tr. 223). He further found that claimant could not reasonably be expected to engage in a full range of sedentary work consisting of eight hours a day on a constant and sustained basis. (Tr. 264). Despite these findings, which were supported by medically accepted clinical laboratory diagnostic techniques, the ALJ found that Dr. Fitter's opinion was not consistent with the record.

In *Newton*, the Fifth Circuit, citing 20 C.F.R. § 404.1527(d)(2), held that an ALJ must consider the following factors before declining to give any weight to the opinions of a treating doctor: length of treatment, frequency of examination, nature

and extent of relationship, support provided by other evidence, consistency of opinion with record, and specialization. 209 F.3d at 456; *see also Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). The Fifth Circuit noted that this regulation is construed in Social Security Ruling ("SSR") 96-2p, which states:

> [A] finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. *Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927.* In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted even if it does not meet the test for controlling weight.

SSR 96-2p, 61 F.R. 34490, 34491 (July 2, 1996) (emphasis added).

Additionally, the Fifth Circuit relied on SSR 96-5p which provides, with respect to "Residual Functional Capacity Assessments and Medical Source Statements," that "Adjudicators must weigh medical source statements under the rules set out in 20 C.F.R. 404.1527⋯, providing appropriate explanations for accepting or rejecting such opinions." SSR 96-5p, 61 F.R. 34471, 34474 (July 2, 1996). In this case, the ALJ failed to perform this analysis, which was error.

Additionally, the record reflects that claimant was regularly taking several medications, including Lortab and Soma. (Tr. 267, 268, 270-74). Lortab is a narcotic medication designed for the relief of moderate-to-severe pain. Under the regulations,

14

the Commissioner is required to consider the "type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate [] pain or other symptoms." *Crowley v. Apfel*, 197 F.3d 194, 199 (5th Cir. 1999) (citing 20 C.F.R. § 404.1529(c)(3)(iv)). The ALJ did not consider the side effects of claimant's medications on his ability to work, and his failure to do so was error.

Here, the ALJ erred in failing to properly evaluate the treating physicians' opinions under *Newton*. Additionally, the ALJ failed to consider the side effects of claimant's narcotic medication on his ability to work. Based on this evidence, the decision of the ALJ should not stand.

Accordingly, the undersigned recommends that this case be **REMANDED** to the Commissioner for further administrative action pursuant to the fourth sentence of 42 U.S.C. § 405(g). This includes, but does not limit, sending the case to the hearing level with instructions to the Administrative Law Judge to refer claimant for a consultative examination or obtain a report from a treating physician regarding his ability to work in light of his physical limitations and the side effects of his medications. Claimant shall be afforded the opportunity to submit additional evidence and to testify at a supplemental hearing.

Inasmuch as the remand recommended herein falls under sentence four of Section 405(g), any judgment entered in connection herewith will be a "final

judgment" for purposes of the Equal Access to Justice Act (EAJA). See, *Richard v. Sullivan*, 955 F.2d 354 (5th Cir. 1992) and *Shalala v. Schaefer*, 509 U.S. 292 (1993).

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN TEN (10) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR. *DOUGLASS V. UNITED***


*SERVICES AUTOMOBILE ASSOCIATION*, **79 F.3D 1415 (5TH CIR. 1996).**

Signed December 30, 2007, at Lafayette, Louisiana.

*C. Michael Hill*
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE